Ronald Ricks was indicted for and convicted of theft in the first degree. He was sentenced to 20 years' imprisonment.
 I
The appellant contends he was deprived the equal protection of the law because the State used all seven of its peremptory strikes to exclude blacks from the jury venire.
Batson v. Kentucky,[1] 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986) requires the prosecution to provide non-discriminatory reasons for its uses of its peremptory strikes once a defendant has made out a prima facie case of purposeful discrimination based on the use by the State of its peremptory strikes.
The following portion of the record is relevant to this issue.
 "THE COURT: All right, I believe they're all gone. Go ahead Rick.
 "MR. EBBINGHOUSE: Judge, we move that we be allowed to strike a new jury panel in this case. Of seven strikes exercised by the State in this case each and every strike was of a black juror and we would contend that Mr. Ricks is a black and would be deprived of a fair and impartial jury under the Constitutional mandates of the recent decisions of the U.S. Supreme Court.
 "THE COURT: Well, to this point they have not ruled on that issue per se. They have ruled on it in peripheral decisions, but that matter is before the Court at this time and I think they're going to rule on that, so until they have ruled on that then I will overrule at this time, but you have that preserved in the record at this time.
"MR EBBINGHOUSE: Thank you, Judge.
"THE COURT: All right.
"PROCEEDINGS ADJOURNED January 13, 1986, 4:25 P.M. *Page 290 
 "PROCEEDINGS RECONVENED January 14, 1986, 9:15 A.M.
 "(WHEREUPON, out of the presence and hearing of the jury, in open court, the following proceedings were had and done:)
"THE COURT: All right, go ahead.
 "MR. EBBINGHOUSE: Yesterday I made a motion for a mistrial on the basis of the prosecutor's strikes and, again, I'd like to renew that motion and request the Court to conduct an inquiry of the prosecutor as to his reason for his strikes under the United States vs. Leslie which is the Fifth Circuit, 1985 case which holds that in the event the prosecution does exercise all of their strikes to strike black venire members of the potential jury panel; in other words, it's appropriate for the Court to conduct such an inquiry.
 "THE COURT: All right, do you show on your notations as to the reasons for your particular exclusions, Mr. Sanders?
 "MR. SANDERS: Yes, sir. Your Honor, I think the defense, they also struck a black off of the jury that the State wanted to be left on. Didn't strike that one. "I don't systematically exclude blacks from trial in a jury. In the last case I tried I didn't. They had some five blacks on it, but I strike them as to what I think is a good, potential witness, or potential juror, for the State's position. And it's based solely on that as to my exclusion what jurors that I will strike. And the ones that I struck, I felt were, maybe pro-defense, but I do not strike jurors just because of their race.
 "THE COURT: All right, now let me look at — let me see. Some of them —
 "MR. EBBINGHOUSE: Judge, also, we'd state for the record in response to his statement the particular juror which we did strike which was black was Mr. Theotis Black who, in response to questions, specifically stated he had a sister-in-law who was a police officer and you will note that many of my strikes were exercised as to those individuals who had relatives who were in law enforcement and whose friends were in law enforcement and I'd point that out as being whether that individual was black or not, but on the basis of law enforcement.
 "MR. SANDERS: If that be true, what about Mrs. Taylor? She was a parking officer and the defense didn't strike her. The State struck her.
 "MR. EBBINGHOUSE: The first strike of the State was Albert Coleman. He is a deputy clerk for the United States District Court who is a black male. That was # 51.
 "THE COURT: Was that individual struck because he was a — was of the black race?
"MR. SANDERS: No, sir.
"THE COURT: All right.
 "MR. SANDERS: I do not strike them because of race, Your Honor.
 "THE COURT: All right, what about #232? That was —
"MR. EBBINGHOUSE: Christopher Salter.
 "THE COURT: Let's see. I haven't found it on my chart yet. 232 was the second strike and as I recall that was, I can't remember his age.
 "MR. SANDERS: He was approximately around 32, Your Honor, or 30 years old and sat at the corner of the aisle.
 "THE COURT: And about the same — somewhere around the same age as the defendant?
 "MR. SANDERS: He was about the same age as the defendant and would be more closely associated with the defendant, and the same was for Mr. Thomas, 273?
 "THE COURT: Uh-huh. What about Betty Taylor, # 267? She was the one that was the parking officer, I believe.
 "MR. SANDERS: Yes, sir; she was a parking officer and she had a nephew that had been charged with robbery.
 "THE COURT: All right. What about # 240, which is Elmira Shepherd?
 "MR. SANDERS: She was the older-type lady that did not appear to be very attentive to any of the questions and no response. The State felt like that she would not give good attention to a trial. That she just sat. *Page 291 
 "THE COURT: What about # 22, which was Deborah Bevelle? She was a — looked like she was in her early 30's as I recall.
 "MR. SANDERS: Yes, sir. I'd say around 30, somewhere like that. She was unemployed and I think that may have known the defendant or his family.
 "THE COURT: All right. Were any of these jurors struck because they were of the black race?
 "MR. SANDERS: No, sir. As I said, Mr. Ebbinghouse could go through my last trial and the one before that and there is no systematic exclusions of any venire because of their race. And if he wishes to do that he can go check that.
 "THE COURT: Well, I'll overrule the motion for a mistrial at this time.
 "The Court is satisfied that the exclusions were not made due to exclusion of blacks. I don't know what they are going to call peremptory challenges if they have to be done on a quota system. I'll be glad when the courts trying to — and the Appellate Courts, and I'm saying this into the record, I'll be glad when the Supreme Court of the United States will start trying cases on the merits instead of trying them on social values. At sometime or another we need to start getting to a truth finding basis instead of a social issue.
 "MR. SANDERS: Your Honor, I would like to also mention since Mr. Ebbinghouse brought it up, that the defendant is black, but the victim was also black, and the witnesses are also black. So, if there is a racial issue as to the defendant and the victim there may be some substance to his remark, but I — I'm just appalled that he even suggests such a thing.
 "THE COURT: Well, I'll overrule the motion at this time.
"All right, anything further?
"MR. EBBINGHOUSE: No, sir." (R. 5-11)
Although the above-quoted portion of the record demonstrates that an attempt was made to comply with the requirements ofBatson, supra, even before it was decided, it is clear from the record that the requirements of Batson, supra, as supported byGriffith supra, were not fully met. The State only gave reasons for six of its seven peremptory strikes. Furthermore, the State only stated that it did not strike juror # 51, Albert Coleman, because of his race. Thus, at least in these two instances, the State failed to come forward with non-racial or neutral reasons for its use of its peremptory strikes.
Therefore, this case is remanded to the trial court with instructions that a hearing be held at which Ricks and his counsel shall be present and at which the State shall have the opportunity to provide the court with non-racial explanations for the use of its peremptory strikes.
A return shall be prepared of this hearing, including the trial judge's written order and appropriate findings, and filed in this court promptly. This cause is, therefore, remanded with directions.
REMANDED WITH DIRECTIONS.
All the Judges concur.
[1] Batson, supra is to be given retroactive application to cases pending on original direct appeal as of April 30, 1986. SeeGriffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708,93 L.Ed.2d 649 (1987); Ex Parte Jackson, 516 So.2d 768 (Ala. 1986);Crawford v. State, 504 So.2d 1221 (Ala.Crim.App. 1987).
 ON RETURN TO REMAND